IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

**Keast Enterprises, Inc., et al.,**[1]    Case No. **18-00856-als11**

Debtor.

## MEMORANDUM OF DECISION

**(date entered on docket: February 3, 2020)**

Before the Court is the Debtor's objection to Evan Larsen's filed Proof of Claim stating that he holds a secured claim in the amount of $446,884.36. The Court has jurisdiction of these matters under 28 U.S.C. §§157(b)(1) and 1334.

## DISCUSSION

Keast Enterprise, Inc. ("Debtor") is a corporate entity registered and organized under Iowa law. It engaged in farming with affiliated entities Hatswell Farms, Inc. and Cyclone Cattle, LLC. Between March 8, 2017 and August 1, 2017 Russell Keast purchased agricultural products from Evan Larsen d/b/a/ Larsen Ag ("Larsen) on behalf of the Debtor. On April 18, 2018 the Debtor filed a voluntary bankruptcy petition under Chapter 11 of the Code. Larsen filed a proof of claim in the amount of $446,884.36, including interest, which represents that he is a secured creditor by virtue of Iowa's Agricultural Supply Dealers Lien ("Ag Lien"). The parties disagree on whether Larsen's lien meets the legal requirements of perfection and sufficiency. This determination involves the application of Iowa Code §570A, et seq. and Article 9 of Iowa's Uniform Commercial Code at §554. "The purpose of the agricultural supply dealer lien . . . [is] to encourage suppliers to work with troubled farmers and provide a fluid feed market." *Schley v. Peoples Bank (In re Schley),* 509 B.R. 901, 910 (Bankr. N.D. Iowa 2014).

---

[1] The consolidated Debtors in this proceeding are In re Cyclone Cattle, L.L.C.. (Case No. 18-00858-als11) and In re Hatswell Farms, Inc. (Case No. 18-00859-als11).

> . . . [I]n attempting to deal with farm credit problems, the legislature tried to strike a balance among the various stakeholders—farmers financial institutions, agricultural supply dealers, and other lienholders, including the holders of statutory liens and creditors holding Article 9 security interests other than financial institutions. The statute does not treat the different stakeholders uniformly.

*Wells Fargo Bank, N.A. v. Tama Benton Coop. (In re Shulista)*, 451 B.R. 867, 873 (Bankr. N.D. Iowa 2011) quoting *Crooked Creek Corp. v. Primebank (In re Crooked Creek Corp.)*, 427 B.R. 500, 506 (Bankr. N.D. Iowa 2010). When "agricultural chemicals, seed, feed, or petroleum products [are purchased and] used for an agricultural purpose" results in a statutory lien effective as of the sale date. Iowa Code §570A.1(4). Perfecting that lien requires the supplier to file:

> . . . a financing statement in the office of the secretary of state as provided in section 554.9308 within thirty-one days after the date that the farmer purchases the agricultural supply. The financing statement shall meet the requirements of section 554.9502, subsection 1, and include all applicable information described in section 554.9516. Filing a financing statement as provided in this subsection satisfies all requirements for perfection of an agricultural lien as provided in chapter 554, article 9.

Iowa Code Ann. § 570A.4(2).

1.     Statutory Time Period.

Larsen's invoices reflect the following purchases by Keast Enterprises, Inc.: $640.00 on March 8, 2017; $330,780.00 on April 21, 2017; $51,864.43 on July 20, 2017; and $47,617.25 on August 1, 2017. Larsen filed a UCC-1 on May 18, 2017 which is within the 31-day statutory time period for the purchase that occurred on April 21, 2017. The Court notes, however, that the record does not include any evidence of financing statements that Larsen filed to perfect any liens related to the purchases made on March 8, 2017, July 20, 2017 or August 1, 2017. Larsen's failure to file financing statements within 31 days of these purchases is fatal to the amount of his secured claim.

> [A]n agricultural supply dealer's financing statement cannot perfect a lien under section 570A.4 for quantities of feed sold on credit after the statement is filed. Instead, the agricultural supply dealer's financing statement only perfects a lien for the feed purchases occurring during the thirty-one days preceding the filing of the financing statement. See Iowa Code § 570A.4(2). This interpretation of section 570A.4(2) best accommodates the interrelationship between chapter 554 and chapter 570A and the legislative compromise underlying the 2003 amendments incorporating chapter 570A into article 9.

*Oyens Feed & Supply, Inc. v. Primebank*, 879 N.W.2d 853, 864 (Iowa 2016).  Due to this failure, the amount of $330,780 is the only portion of Larsen's claim that is subject to the standards under the Uniform Commercial Code for financing statements.

    2.    Sufficiency of Financing Statement.

Under Iowa's Uniform Commercial Code a financing statement is sufficient only if it properly names:  1) the debtor; 2) the secured party; and 3) the collateral covered.[2]  Iowa Code §554.9502(1)(a-c).  There seems to be agreement that the second and third elements have been adequately demonstrated.  Central to the parties' dispute is whether the first element, the debtor's name, was utilized on the financing statement, and if not whether it is of any consequence.

Iowa Code §554.9503(1)(a) specifies that a financing statement sufficiently provides the name of the debtor, who is a registered organization, such as Keast Enterprises Inc., when it "provides the name that is stated to be the registered organization's name on the public organic record . . . ."  See Iowa Code §554.9102(bs) and (bp) (defining "registered organization" and "public organic record").  In contrast, section 554.9503(1)(d) provides that an individual's legal name is sufficient for purposes of a debtor who is an individual.  The evidence suggests that Larsen indiscriminately referred to Keast Enterprises, Inc. and Russell Keast as the same entity.  Such usage is legally incorrect.  *In re Banke* addressed the issue of proper debtor identification, albeit in a different context, but that opinion provides helpful guidance in this case:  "where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision dealing with the collateral."  275 B.R. 317, 331 (Bankr. N.D. Iowa 2002).  By filing his proof of claim, Larsen acknowledges that Keast Enterprises, Inc. purchased the goods and used it to produce collateral that the business entity owned which serves as the basis for his Ag Lien.  Using Russell Keast's individual name in lieu of the Debtor's registered name renders the financing statement seriously misleading and results in Larsen's lien being ineffective and unperfected.  *United States v. Lincoln Sav. Bank (in Re Commercial Millwright Serv. Corp.)*, 245 B.R. 597, 603 (Bankr. N.D. Iowa 1999).

---

[2] The description of collateral states that it is "[f]iled to perfect an Ag Supply Dealers lien."  Additional text that broadly describes collateral is confusing and superfluous.  By statute Larsen's lien is limited to the amount of the products purchased and used for a specific crop.

3

  In an effort to avoid this result, Larsen asserts there is an exception that would apply to overcome any seriously misleading information contained in his financing statement.

> If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with section 554.9503, subsection 1, the name provided does not make the financing statement seriously misleading.

Iowa Code §554.9506(3).  He provides certified reports that show his UCC-1 appearing in searches naming "Russell Keast," "Keast Enterprises," and both "Russell Keast," and "Keast Enterprises, Inc.,"  This evidence is not persuasive.  First, it presumes a creditor would know to include all of these entities and individuals; or it imposes an undue burden on a searching party to discover that all these possibilities are necessary to its query.  Either of these outcomes are contrary to the purpose of the financing statement standards under Article 9.  Second, the February 2018 amendment adding Keast Enterprise, Inc. does not relate back to the UCC-1 originally filed on May 18, 2018.  Iowa Code § 554.9512(4).  The reports Larsen relies upon are dated November 29, 2019—almost 21 months after the original financing statement naming only "Russel (sic) Keast" as the debtor.  There is a real possibility that the reason the search records submitted by Larsen only produced the financing statement in question is because of the later amendment adding "Keast Enterprises, Inc." as the debtor.  There is no proof that these same searches on an earlier date would have been similarly successful.  Third, the lien arising from the amendment to the original financing statement is only effective from and after February 18, 2018 which is disqualified from perfection as being clearly outside the thirty-one-day filing timeframe required by the statute.

  For the reasons stated Larsen's claim that he holds a perfected lien against Keast Enterprises, Inc., arising from the purchase of products that occurred in April 2017 fails under prevailing Iowa law.  Larsen's claim is secured only to the extent there is any value remaining in the collateral after payment of any obligations owing to all claimants holding perfected liens in that same collateral.  11 U.S.C. §506(a); *Minn. Hous. Fin. Agency v. Schmidt (In re Schmidt)*, 765 F.3d 877, 880 (8th Cir. 2014).  Any resulting balance of Larsen's claim, by definition, is unsecured.  11 U.S.C. §506(a); *In re Riverbend Leasing LLC*, 458 B.R. 520, 533 (Bankr. S.D. Iowa 2011); *In re Fansteel Foundry Corp.*, No. 16-01825-als11, 2018 Bankr. LEXIS 3309, at *17 (Bankr. S.D. Iowa Oct. 26, 2018).

**IT IS HEREBY ORDERED:**

    1.       The Debtor's objection to Larsen's proof of claim is sustained.

    2.       Larsen's objections are overruled.

    3.       Larsen's claim is subject to treatment as a secured claim to the extent there is value in the collateral after payment of all other perfected lienholders with any balance that remains owing to Larsen being an unsecured claim.


                                                        /s/ Anita L. Shodeen
                                                        Anita L. Shodeen
                                                        U.S. Bankruptcy Judge


Parties receiving this Memorandum of Decision from the Clerk of Court:

Electronic Filers in this Chapter Case