IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

**Keast Enterprises, Inc., et al.,**[1]     Case No. **18-00856-als11**

Debtor.

**MEMORANDUM OF DECISION**

**(date entered on docket: May 26, 2020)**

Before the Court are objections to a proof of claim and Motion for Allowance of Administrative Expense Priority filed by Aaron and Teri Vorthmann and Vorthmann Legacy Farms (collectively "Vorthmann"). The Court has jurisdiction of these matters under 28 U.S.C. §§157(b)(1) and 1334.

**DISCUSSION**

On April 17, 2018 Keast Enterprises, Inc. ("Keast") along with its affiliates Cyclone Cattle, LLC and Hatswell Farms, Inc. each filed bankruptcy petitions under Chapter 11. The cases were substantively consolidated on May 28, 2019. The pending matters specifically involve Cyclone Cattle, LLC ("Cyclone").

1.      Vorthmann Proof of Claim

The Notice of Filing identified August 16, 2018 as the deadline for filing proofs of claim in each of the bankruptcy cases. Vorthmann first filed a proof of claim (POC 15-1) in Cyclone on April 29, 2019. The claim alleges "breach of agreement, failure to perform, mitigation damages" as its basis and represents the amount of $368,154.59 is subject to a perfected lien under a

---

[1] The consolidated Debtors in this proceeding are In re Cyclone Cattle, L.L.C.. (Case No. 18-00858-als11) and In re Hatswell Farms, Inc. (Case No. 18-00859-als11).

"Recorded Easement & Mediation Agreement." The Debtor objects to the proof of claim on the grounds that it is tardily filed and includes no support. On September 12, 2019 Vorthmann filed a Motion to Extend Time and requested POC 15-1[2] be deemed timely filed. The Court approved that Motion over Debtor's objection. (Docket number 372). Debtor's objection that POC 15-1 lacks support remains at issue.

Vorthmann attaches two documents to POC 15-1: A Manure Stockpiling Agreement (MSA) between Vorthmann and Cyclone dated May 8, 2007 which is filed of record in Pottawattamie County where the feedlot is located and an "Agreement" reached on April 4, 2015 and executed by the parties on May 9, 2015. The Debtor argues these attachments fail to establish that Vorthmann is a secured creditor.

Bankruptcy Rule 3001(c)(1) states "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim." To comply, a creditor making a secured claim must provide documentation that establishes a security agreement or gives rise to a lien.

Vorthmann has routinely argued the MSA is an easement that constitutes an interest in, or against, Cyclone's real estate. The Debtor filed an adversary proceeding seeking declaratory judgment on the parties' disagreement about the effect of the MSA. Contrary to Vorthmann's belief, this Court held that the "MSA is nothing more, and nothing less, than a contract for the unspecified delivery of manure to places designated by the Vorthmanns" and does not qualify as an easement under Iowa law. *Cyclone Cattle, LLC v. Vorthmann Legacy Farms, LLC, et al.* Adv. P. No. 19-30042, docket numbers 32 and 33. The MSA does not meet the legal requirements of a security agreement or security interest.

In 2007 Vorthmann sold a feedlot to Cyclone. Following countless disputes, the parties came to the Agreement attached to POC 15-1:

> Over the ensuing years, the parties had numerous disagreements and problem s (sic) with the administration of the agreements. Eventually the Vorthmanns sued Cyclone for damages and Cyclone counter sued. This agreement seeks to clarify the respective rights and obligations of the parties and resolve all pending issues between the parties.

---

[2] Vorthmann filed untimely proofs of claim in the Keast case and amendments to POC 15-1 all of which have been withdrawn.

In a section titled "Release and Dismissal" the parties agreed the sum of $78,000 will be paid to Vorthmann:

> [I]n full compromise, settlement and satisfaction of and as the sole consideration of all actions, claims and demands whatsoever, that now exist against Cyclone Cattle LLC, its employees, members & agents as a result of or related to the operation of the feed lot or pivot, any agreement or any matter set forth in LACA113564.

Standing alone, the plain language and purpose of the Agreement does not establish a security interest or any type of lien against Cyclone's property.

Vorthmann POC 15-1 lacks sufficient support and detail to a claim in the amount of $368,154.59 as either secured or unsecured. The Agreement, however, is adequate to support an unsecured claim of $78,000 against which the record reflects a $20,000 payment has been made. Vorthmann is therefore entitled to an unsecured claim allowed in the amount of $58,000.

2.    Motion for Allowance of Administrative Expense Claim (Motion)

In principle, an administrative claim serves the purpose of encouraging parties to extend credit and provide funds for a debtor to operate and rehabilitate it business, or assist in an orderly liquidation of assets. *In re Comput. Learning Ctrs., Inc.,* 298 B.R. 569, 577 (Bankr. E.D. Va. 2003). Administrative priority is not conferred on all post-petition expenses. *In re Pauling Auto Supply, Inc.*, 158 B.R. 789, 793 (Bankr. N.D. Iowa 1993). The requirements are subject to a narrow application of the law and a court's discretion. *Agriprocessors, Inc. v. Iowa Quality Beef Supply Network, L.L.C.,* (*In re Tama Beef Packing, Inc.*), 290 B.R. 90, 95 (B.A.P. 8th Cir. 2003). This limiting construction is required because authorizing payment of administrative expense claims "run[s] counter to the central premise of the bankruptcy distributions which is a prorata distribution among all creditors." *In re Comput. Learning Ctrs., Inc.,* 298 B.R. at 577. The claimant bears the burden of proof by a preponderance of the evidence to prove its expense is entitled to be paid as an administrative expense. *GE Captial Commer. Inc. v. Sylva Corp.*, 519 B.R. 776, 779 (B.A.P. 8th Cir. 2014); *Williams v. IMC Mortg. Co. (In re Williams),* 246 B.R. 591, 595 (B.A.P. 8th Cir. 1999); *Rice v. Bennet* (*In re Supermarket Inv'rs, Inc.)*, 441 B.R. 333, 342 (Bankr. E.D. Ark. 2010).

Included in Vorthmann's 5000-acre farming operation are approximately 90 acres (Parcel A) where a central pivot and well are located, which were utilized in the operation of Cyclone's

feedlot. The Motion requests administrative expense priority in the amount of $316,867.88[3] for damages and expenses related to Parcel A. Reference to 11 U.S.C. §503(b)(1)(a) and §503(b)(3)(D) are made as the statutory basis of the claim. Citing to *Reading Co. v. Brown,* 391 U.S. 471 (1968), the Motion asserts that Cyclone "routinely engaged in what will be proven as either negligent, or intentional, behavior which has a deleterious financial impact on the Vorthmann contiguous real estate, livestock and chattels" and therefore any damages or expenses incurred qualify for treatment as an administrative claim.

    a.    Statutory Grounds

Expenses claimed under 11 U.S.C. §503(b) generally stem from voluntary transactions with third parties who lend goods or services necessary to the successful reorganization of the debtor's estate. *Toma Steel Supply Inc. v. TransAmerican natural Cas Corp. (In Matter of TransaAmerican Natural Gas Corp.),* 978 F.2d 1409, 1415 (5th Cir. 1992). Under 11 U.S.C. §503(b)(1)(a) a claimant can request payment priority for expenses that represent "the actual, necessary costs and expenses of preserving the estate." Similar language is found in Section 503(b)(3)(D) which allows a creditor to request payment as an administrative expense the "the actual, necessary expenses . . . incurred by – a creditor . . . in making a substantial contribution" in a chapter 11 case. To be successful, Vorthmann must demonstrate: 1) that the claimed expenses arose post-petition involving a transaction with the debtor; and 2) that the estate benefited in some demonstrable or tangible way. *In re Tama Beef Packing, Inc.*, 290 B.R. at 96; *In re Williams*, 246 B.R. at 594; *In re Pauling Auto Supply, Inc.,* 158 B.R. at 793.

A "concrete benefit" must be conferred upon the estate; a merely incidental or tenuous benefit will not suffice. *In re Cheatle,* 150 B.R. 266, 269 (Bankr. D. Colo. 1993). "[O]nly those creditors that perform services that are actual and necessary to preserve the bankrupt estate should be given administrative priority. Thus, this court's analysis necessarily focuses on the actual benefit conferred upon the estate, not the loss sustained by creditors." *In re Supermarket Investors, Inc.*, 441 B.R. at 343 (cleaned up); citing *In re Cheatle,* 150 B.R. at 270; *In re Tiburon View Apartments, LF*, Nos. BK10-81025-TLS, BK10-81026-TLS, 2012 Bankr. LEXIS 4965, at *6 (Bankr. D. Neb. Oct. 22, 2012).

---

[3] This amount conflicts with Vorthmann's Exhibit V-1 admitted into evidence that represents the administrative claim is $105,725.15.

The uncontroverted facts establish Cyclone ceased its feedlot operation in April 2018. Consequently, it is not surprising that Vorthmann has supplied no evidence to demonstrate its expenses or damages were related in any way to the Debtor's ongoing business operation. There is also a failure of proof to demonstrate that any of the expenses incurred related to assistance in liquidating Cyclone's assets.

The evidence clearly supports the conclusion that the administrative claim is simply an attempt to obtain damages and reimbursement from the bankruptcy estate to compensate Vorthmann for its estimated losses and expenses, not for any benefit conferred upon the bankruptcy estate.

      b.      Reading Co. v. Brown

In *Reading,* the Supreme Court expanded the right to administrative claim status under unique facts that served as the basis for its holding. 391 U.S. 471 (1968). After the debtor filed bankruptcy and during the time when the trustee was operating its industrial building, it was destroyed by a fire causing extensive damage to several adjoining structures, including property owned by Reading Company. The injured third parties alleged their damages, totaling $3.5 million, were administrative expense claims entitled to priority payment. The trustee objected, taking the position that the damages were not expenses related to the administration of the bankruptcy estate and to allow the claim would reduce the funds available to pay off creditor claims. For purposes of their dispute the parties agreed that the fire resulted from the negligence of the trustee and a workman. The opinion analyzes the relative rights of creditors and the damages arising from the post-petition negligent conduct. After examining the relevant statute, the majority concluded:

> We see no reason to indulge in a strained construction of the relevant provisions, for we are persuaded that it is theoretically sounder, as well as linguistically more comfortable, to treat tort claims arising during an arrangement as actual and necessary expenses of the arrangement rather than debts of the bankrupt.

*Id at 483.* This concept of "fundamental fairness" remains a viable theory for specific types of claims, even when there is no discernable benefit to the estate. *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173 (3rd Cir. 2012).

Application of *Reading* has not been directly addressed by the Court of Appeals in this circuit. See *Fieber's Dairy, Inc. v. Purina Mills, Inc.,* 331 F.3d 584 (8th Cir. 2003). However, one bankruptcy court has considered the issue. *In re Supermarket Investors, Inc.*, 441 B.R. at 342. Courts have actively limited the use of the exception to claims for tort damages, or cases involving intentional misconduct by the trustee or debtor-in-possession.[4] At the hearing, Vorthmann failed to provide any argument or evidence related to intentional torts. Therefore, at a minimum, Vorthmann bears the burden to prove negligence on the part of Cyclone which has not been accomplished based upon the record before the Court in this matter.

Under Iowa law "[t]o be actionable, a claim of negligence must satisfy four elements: (1) existence of a duty, (2) failure to conform to that duty, (3) causation, and (4) damages." *Intlekofer v. Retiberry Rental Prop., LLC,* 939 N.W.2d 115 (2019) citing *Stotts v. Eveleth*, 688 N.W. 2d 803, 807 (Iowa 2004). "As a general rule, conduct that produces an unreasonable danger of injury to others can constitute negligence. However, underlying this general rule is the axiom that in order for there to be negligence a recognized legal duty must exist that is owed the injured party by the alleged wrongdoer." *Fiala v. Rains*, 519 N.W.2d 386, 388 (Iowa 1994) (internal citation omitted). "Actionable duty is defined by the relationship between individuals; it is a legal obligation imposed upon one individual for the benefit of another person or particularized class of persons." *Id.* quoting *Sankey v. Richenberger,* 456 N.W.2d 206, 209 (Iowa 1990).

Vorthmann complains that Cyclone failed to monitor, operate or repair the central pivot and well which resulted in damages to its property. No details explaining why these alleged actions rise to the level of negligence or intentional conduct were provided. Further, there is no evidence that establishes a duty, let alone a breach of any duty, owing by Cyclone to Vorthmann. Even if the Court could infer, and impose, a duty owing by Cyclone, the request for administrative claim

---

[4] The following cases include the circuits which have addressed a modern application of *Reading*: *In re Charlesbank Laundry, Inc.*, 755 F.2d 200 (1st Cir. 1985) (allowing attorney fees for prosecuting injunctive relief for a nuisance); *Palley v. Refco Inc.,* 331 F. App'x 12 (2d Cir. 2009) (denied claim for failure to establish post-petition tortious conduct); *In re Phila. Newspapers, LLC*, 690 F.3d 161 (3d Cir. 2012), as corrected (Oct. 25, 2012) (administrative claims allowed for damages); *Total Minatome Corp. v. Jade/Wade Drilling, Inc.,* 258 F.3d 385 (5th Cir. 2001) (lack of wrongful conduct precludes priority treatment of claim); *UMW 1974 Plan & Trust v. Lexington Coal Co., LLC*, 396 B.R. 461 (B.A.P. 6th Cir. 2008) (*Reading* exception is restricted to specific conduct resulting in denial of priority); *In re Weinschneider*, 395 B.R. 401 (7th Cir. 2005) *Kipperman v. IRS, United States*, 496 B.R. 165 (B.A.P. 9th Cir. 2013) (IRS penalty did not arise from active wrongdoing); *Amplex Corp. v. Gonzales*, 359 B.R. 356 (B.A.P. 10th Cir. 2007) (*Reading* not applicable to insider's claim of attorney fees; *In re N.P. Mining Co.*, 963 F.2d 1449, 1451 (11th Cir. 1992) (penalties assessed post-petition against coal company are administrative claims).

grounded in negligence is deficient for a failure to establish causation for the claimed damages. Taking the record as a whole there is a lack of certainty to support a finding that any decrease in yields or soil composition on Parcel A, illness to cattle and repairs undertaken by Vorthmann bear any relationship to the actions, or inaction, of Cyclone after it filed bankruptcy.

Vorthmann has failed to meet its burden of proof to establish entitlement to an administrative claim under 11 U.S.C. 503(b) or the *Reading* exception.

For the reasons stated, **IT IS HEREBY ORDERED**:

1. The Debtor's objection to POC 15-1 is granted in part and denied in part.

2. POC 15-1 is allowed as an unsecured claim in the amount of $58,000.

3. The Motion for Administrative Expense Claim in the amount of $315,867.88 is denied.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter Case